FILED by \_\_\_\_ MC \_\_\_ D.C.

Mar 9, 2017

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. – MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-20171-CR-UNGARO/OTAZO-REYES

18 U.S.C. § 641
18 U.S.C. § 981

UNITED STATES OF AMERICA

v.

DAXC, LLC,

        Defendant.
_____/

## INFORMATION

The Attorney for the United States charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Information:

#### The Federal Low-Income Housing Tax Credit and Grant Programs

1.    The United States Government funded the construction of affordable housing for low-income Americans through, among other means, the award to developers of federal tax credits from the Internal Revenue Service ("IRS") and federal grant monies from the United States Department of Treasury.

2.    The U.S. Department of Treasury was a department of the federal government established to manage federal government revenue. The IRS was an agency of the U.S. Department of Treasury responsible for enforcing and administering the tax laws of the United States, and collecting federal taxes owed the United States.

3.     The Tax Reform Act of 1986 authorized state housing agencies to issue IRS federal tax credits to developers for the construction of low-income housing. These federal tax credits allowed for a dollar-for-dollar reduction of a taxpayer's annual tax liability over a period of years. Developers typically sold these federal tax credits to investors to fund the construction of low-income housing developments.

4.     The American Recovery and Reinvestment Act of 2009 authorized state housing agencies to issue federal grant monies from the U.S. Department of Treasury to developers for the construction of low-income housing. Developers used these federal grant monies to fund the construction of low-income housing developments.

5.     Pursuant to both programs, state housing agencies received an annual allotment of federal tax credits and federal grant monies, directly from the federal government, for the construction of low-income housing developments. Florida Housing Finance Corporation ("FHFC"), located in Tallahassee, Florida, was the designated state housing agency that issued these federal tax credits and federal grant monies in Florida.

6.     FHFC issued federal tax credits and federal grant monies to developers through an annual application process. Developers submitted applications to FHFC for the construction of proposed low-income housing developments. FHFC selected some of the proposed developments to receive federal tax credits and federal grant monies through a competitive process.

7.     Once selected, FHFC required the selected developer to submit its costs to build the proposed development to FHFC's representatives. This submission included a contract

signed by the developer and contractor setting forth the itemized construction cost for the low-income housing development (the "construction contract").

8. FHFC allocated federal low-income housing tax credits and federal grant monies based on the developer's submitted costs, including primarily the construction contract. Generally, a development with higher submitted costs would receive a greater allocation of federal tax credits and/or federal grant monies.

9. FHFC allowed those developers receiving federal tax credits and federal grant monies to receive a fee of sixteen percent of the development's costs, and allowed contractors to receive a fee of fourteen percent of the construction costs.

### The Defendant and Related Entities

10. Developer A was a low-income housing developer in Miami, Florida, incorporated in 2001, with principals listed as Principal A, B, C, & D.

11. Contractor A was a low-income housing general contractor in Miami, Florida, incorporated in 2008, with principals listed as Principal A, B, C, D & E.

12. Defendant **DAXC, LLC** ("DAXC") was an entity in Miami, Florida, incorporated in 2009, listing Principal A as the managing member.

### Unaffiliated Entities

13. Shell Subcontractor A was a concrete shell company in Palm Beach, Florida, incorporated in 1991.

### The Low-Income Housing Developments

14. FHFC awarded federal tax credits and grant monies to Developer A to construct numerous low-income housing developments, including the following four low-income housing

3

developments (the "Subject Developments") located in the Southern District of Florida and elsewhere:

- **Vista Mar**: a 110-unit low-income apartment complex in Miami, Florida;
- **Pinnacle at Avery Glen**: a 140-unit low-income apartment complex in Sunrise, Florida;
- **Orchid Grove**: an 80-unit low-income apartment complex in Homestead, Florida; and
- **Cypress Cove**: an 80-unit low-income apartment complex in Winter Haven, Florida.

## THE THEFT OF GOVERNMENT MONEY SCHEME

The scheme by which DAXC accomplished the theft of government money consisted of the following:

15. Developer A submitted applications to build several low-income housing projects to FHFC, and FHFC selected the Subject Developments as eligible for receipt of federal tax credits and/or federal grant monies.

16. Developer A selected its wholly owned contractor - Contractor A - as the general contractor for the Subject Developments.

17. Contractor A solicited final bids from subcontractors for the construction line items related to the Subject Developments.

18. With respect to the most expensive construction line item, Shell Subcontractor A submitted final bids to complete the concrete shell work for the Subject Developments.

19. Developer A and Contractor A did not list Shell Subcontractor A's final bid amount for concrete shell work in itemized construction contracts submitted to FHFC's representatives for the Subject Developments.

4

20. Contractor A signed construction contracts for concrete shell work with its affiliated company **DAXC** at an inflated price for each of the Subject Developments even though **DAXC** did not have the personnel or equipment to complete any concrete shell work. In turn, **DAXC** subcontracted with Shell Subcontractor A to actually complete the concrete shell work on the Subject Developments at Shell Subcontractor A's actual cost of work price.

21. For example, on or about April 15, 2010, Contractor A signed a contract with **DAXC** to complete the concrete shell work on Vista Mar for an inflated price of approximately $6 million. Shell Subcontractor A, however, had previously signed a contract with **DAXC** to complete the concrete shell work on Vista Mar at the actual cost of work price of approximately $4.6 million.

22. Contractor A signed inflated construction contracts with **DAXC** on the Subject Developments with inflated amounts ranging from approximately $200,000 to $1.5 million for a total inflation on the four developments of approximately $3.4 million.

23. Developer A then submitted the inflated construction contracts to FHFC's representatives for the receipt of federal tax credits and grant monies. These inflated construction contracts also inflated Developer A's and Contractor A's fees by approximately $800,000. As a result of the **DAXC** inflated construction contract scheme, FHFC allocated approximately $4.2 million in excess federal funds that it otherwise would not have allocated.

24. From 2009 to 2011, Shell Subcontractor A completed the concrete shell work on the Subject Developments at its final bid price. **DAXC** did not conduct any construction or concrete shell work on the Subject Developments. Nonetheless, during that period, **DAXC** retained the excess funds from the inflated construction contracts.

25. On or about November 8, 2011, among other similar wire transfers, Contractor A's principals received wire transfers of payments of approximately $2.5 million from the inflated construction contract scheme from the **DAXC** bank account.

## Theft of Government Money
## (18 U.S.C. § 641)

26. The General Allegations and Theft of Government Money Scheme sections of this Information are realleged and incorporated herein.

27. On or about November 8, 2011, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendant,

**DAXC, LLC,**

did knowingly and willfully embezzle, steal, purloin, and convert to its own use and gain, a thing of value of the United States and of a department and agency thereof, the aggregate amount of which exceeded $1,000.00, that is, Internal Revenue Code Section 42 federal tax credits and United States Department of Treasury grant monies, to which he was not entitled, in violation of Title 18, United States Code, Section 641.

## FORFEITURE
## (18 U.S.C. § 981)

1. The General Allegations and Theft of Government Money Scheme sections of this Information are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **DAXC, LLC**, has an interest.

2. Upon conviction of the violation of Title 18, United States Code, Section 641, charged in this Information, the defendant shall forfeit to the United States any property, real or

personal, involved in such violation, or any property traceable to such property, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

    3.    The property subject to forfeiture includes, but is not limited to, a forfeiture money judgment in the sum of $4,212,825.00 in United States currency, which sum represents the value of property derived from proceeds of the offenses.

    4.    If any of the property described above, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America to seek forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and the procedures set forth in Title 21, United States Code, Section 853, as made applicable by Title 28, United States Code, Section 2461(c).

*[signature]*
RANDY A. HUMMEL
ATTORNEY FOR THE UNITED STATES, ACTING UNDER AUTHORITY CONFERRED BY 28 U.S.C. § 515

*[signature]*
MICHAEL R. SHERWIN
ASSISTANT U.S. ATTORNEY

*[signature]*
MICHAEL N. BERGER
ASSISTANT U.S. ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| UNITED STATES OF AMERICA | CASE NO. _____ |
|---|---|
| vs.<br>DAXC, LLC,<br>**Defendant.** _____ / | **CERTIFICATE OF TRIAL ATTORNEY*** <br><br>**Superseding Case Information:** |

**Court Division**: (Select One)

| | | | | New Defendant(s) | Yes \_\_\_\_ | No \_\_\_\_ |
|---|---|---|---|---|---|---|
| X | Miami | \_\_\_\_ | Key West | Number of New Defendants | \_\_\_\_ | |
| \_\_\_\_ | FTL | \_\_\_\_ | WPB    \_\_\_\_ FTP | Total number of counts | \_\_\_\_ | |

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:     (Yes or No)     NO
   List language and/or dialect   _____

4. This case will take   0   days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                               (Check only one)

   | I   | 0 to 5 days       | X    | Petty    | \_\_\_\_ |
   |-----|-------------------|------|----------|------|
   | II  | 6 to 10 days      | \_\_\_\_ | Minor    | \_\_\_\_ |
   | II  | 11 to 20 days     | \_\_\_\_ | Misdem.  | \_\_\_\_ |
   | IV  | 21 to 60 days     | \_\_\_\_ | Felony   | X    |
   | V:  | 61 days and over  | \_\_\_\_ |          |      |

6. Has this case been previously filed in this District Court?    (Yes or No)    NO
   If yes:
   Judge:                                             Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?    (Yes or No)    NO
   If yes:
   Magistrate Case No.                                _____
   Related Miscellaneous numbers:                     _____
   Defendant(s) in federal custody as of              _____
   Defendant(s) in state custody as of                _____
   Rule 20 from the _____     District of _____

   Is this a potential death penalty case? (Yes or No)    No

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?    \_\_\_\_ Yes    X   No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?    \_\_\_\_ Yes    X   No

_____
MICHAEL R. SHERWIN
ASSISTANT UNITED STATES ATTORNEY
COURT ID No. A5501230

*Penalty Sheet(s) attached                                                                          REV 4/8/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** DAXC, LLC

**Case No:** _____

Count #: 1

Theft of Government Money

Title 18, United States Code, Section 641

**\* Max. Penalty:** $250,000 Fine

Count #:



\*Max. Penalty:

Count #:



\*Max. Penalty:

Count #:



\*Max. Penalty:

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.