UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-20171-CR-UU

UNITED STATES OF AMERICA

v.

DAXC, LLC,

        Defendant.

_____/

## DEFERRED PROSECUTION AGREEMENT

Defendant DAXC, LLC (the "Company"), pursuant to authority granted by the Company's Members, and the United States Attorney's Office (the "Office") enter into this deferred prosecution agreement (the "Agreement").

### Criminal Information and Acceptance of Responsibility

1.    The Company acknowledges and agrees that the Office will file the attached criminal Information in the United States District Court for the Southern District of Florida charging the Company with theft of government property, in violation of Title 18, United States Code, Section 641. In so doing, the Company knowingly waives its right to indictment on this charge, as well as all rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, Title 18, United States Code, Section 3161, and Federal Rule of Criminal Procedure 48(b) and consents to the filing of the Information, as provided under the terms of this Agreement, in the United States District Court for the Southern District of Florida. The Office agrees to defer prosecution of the Company pursuant to the terms and conditions described below.

2.  The Company admits, accepts, and acknowledges that it is responsible under United States law for the acts of its officers, directors, employees, and agents as set forth in the attached Statement of Facts, and that the facts described in the attached Statement of Facts are true and accurate. Should the Office pursue the prosecution that is deferred by this Agreement, the Company stipulates to the admissibility of the attached Statement of Facts in any proceeding, including any trial, guilty plea, or sentencing proceeding, and will not contradict anything in the attached Statement of Facts at any such proceeding.

## Term of the Agreement

3.  This Agreement is effective for a period beginning on the date on which the Information is filed and ending one year from that date (the "Term"). The Company agrees, however, that, in the event the Office determines, in its sole discretion, that the Company has knowingly violated any provision of this Agreement or has failed to completely perform or fulfill each of the Company's obligations under this Agreement, an extension or extensions of the Term may be imposed by the Office, in its sole discretion, for up to a total additional time period of three years. If the Court rejects the Agreement, all the provisions of the Agreement shall be deemed null and void, and the Term shall be deemed to have not begun.

## Future Cooperation and Disclosure Requirements

4.  The Company, including its parent and affiliated companies, shall cooperate fully with the Office in any and all matters relating to the conduct described in this Agreement and the attached Statement of Facts and other conduct under investigation by the Office at any time during the Term. The Company agrees that its cooperation pursuant to this paragraph shall include, but not be limited to, the following:

2

      a.      The Company shall truthfully disclose all factual information not protected by a valid claim of attorney-client privilege or attorney work product doctrine with respect to its activities, those of its parent company and affiliates, and those of its present and former directors, officers, employees, agents, and consultants, including any evidence or allegations and internal or external investigations, about which the Company has any knowledge or about which the Office may inquire. This obligation of truthful disclosure includes, but is not limited to, the obligation of the Company to provide to the Office, upon request, any document, record or other tangible evidence about which the Office may inquire of the Company.

      b.      The Company shall use its best efforts to make available for interviews or testimony, as requested by the Office, present or former officers, directors, employees, agents and consultants of the Company. This obligation includes, but is not limited to, sworn testimony before a federal grand jury or in federal trials, as well as interviews with domestic or foreign law enforcement and regulatory authorities. Cooperation under this Paragraph shall include identification of witnesses who, to the knowledge of the Company, may have material information regarding the matters under investigation.

5.      In addition to the obligations in Paragraph 4, during the Term, should the Company learn of any evidence or allegation of a violation of U.S. federal law, the Company shall promptly report such evidence or allegation to the Office.

### Payment of Monetary Penalty

6.      The Office and the Company agree that application of the United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") to determine the applicable fine range yields the following analysis:

3

a. The 2017 USSG are applicable to this matter.

b. <u>Offense Level</u>. The total offense level is calculated as follows:

| | |
|---|---|
| Base Offense Level | 6 |
| Loss Between $3,500,000 and $9,500,000 | +18 |
| Sophisticated Means | +2 |
| Acceptance of Responsibility | -2 |
| Timely Notification | -1 |
| **TOTAL** | 20 |

c. <u>Base Fine</u>. Based upon USSG § 8C2.4(a)(1), the base fine is $1,000,000.

The Company agrees to pay a monetary penalty in the amount of $1,000,000 to the United States Treasury no later than five business days after the Agreement is fully executed. The Company and the Office agree that this penalty is appropriate given the facts and circumstances of this case, including. The $1,000,000 penalty is final and shall not be refunded. Furthermore, nothing in this Agreement shall be deemed an agreement by the Office that $1,000,000 is the maximum penalty that may be imposed in any future prosecution, and the Office is not precluded from arguing in any future prosecution that the Court should impose a higher fine, although the Office agrees that under those circumstances, it will recommend to the Court that any amount paid under this Agreement should be offset against any fine the Court imposes as part of a future judgment. The Company acknowledges that no tax deduction may be sought in connection with the payment of any part of this $1,000,000 penalty. The Company shall not seek or accept directly or indirectly reimbursement or indemnification from any source with regard to the penalty or disgorgement amounts that the Company pays pursuant to this Agreement or any other agreement

4

entered into with an enforcement authority or regulator concerning the facts set forth in the attached Statement of Facts.

### Forfeiture

7. As a result of the Company's conduct, including the conduct set forth in the attached Statement of Facts, the parties agree the Office could institute a civil and/or criminal forfeiture action against certain funds held by the Company and that such funds would be forfeitable pursuant to 18 U.S.C. § 982. The Company hereby acknowledges that at least $4,212.825.00 was proceeds of/involved in transactions in violation of 18 U.S.C. § 641. The Company hereby agrees to forfeit to the United States the sum of $4,212.825.00 (the "Forfeiture Amount"). The Company hereby agrees that, in the event the funds used to pay the Forfeiture Amount are not directly traceable to the transactions, the monies used to pay the Forfeiture Amount shall be considered substitute *res* for the purpose of forfeiture to the United States pursuant to 18 U.S.C. §§ 981, 982 and the Company releases any and all claims it may have to such funds. The Company shall pay the Forfeiture Amount plus any associated transfer fees no later than five business days after the Agreement is fully executed, pursuant to payment instructions provided by the Office in its sole discretion. The Company agrees to sign any additional documents necessary to complete forfeiture of the funds.

8. The Forfeiture Amount paid is final and shall not be refunded should the Office later determine that the Company has breached this Agreement and commences a prosecution against the Company. In the event of a breach of this Agreement and subsequent prosecution, the Office may pursue additional civil and criminal forfeiture in excess of the Forfeiture Amount. The Office agrees that in the event of a subsequent breach and prosecution, it will recommend to the

Court that the amounts paid pursuant to this Agreement be offset against whatever forfeiture the Court shall impose as part of its judgment. The Company understands that such a recommendation will not be binding on the Court.

### Deferred Prosecution

9. In consideration of the undertakings agreed to by the Company herein, the Office agrees that any prosecution of the Company (its affiliates, members, employees, and agents) for the conduct set forth in the attached Statement of Facts be and hereby is deferred for the Term. To the extent there is conduct disclosed by the Company that is not set forth in the attached Statement of Facts, such conduct will not be exempt from further prosecution and is not within the scope of or relevant to this Agreement.

10. The Office further agrees that if the Company fully complies with all of its obligations under this Agreement, the Office will not continue the criminal prosecution against the Company described in Paragraph 1 and, at the conclusion of the Term, this Agreement shall expire. Within three months of the full payment of the forfeiture and fine, the Office shall seek dismissal with prejudice of the criminal Information filed against the Company described in Paragraph 1, and agrees not to file charges in the future against the Company based on the conduct described in this Agreement and the attached Statement of Facts, unless there is a breach of this Agreement.

### Breach of the Agreement

11. If, during the Term, the Company (a) commits any felony under U.S. federal law; (b) provides in connection with this Agreement deliberately false, incomplete, or misleading information, including in connection with its disclosure of information about individual culpability; (c) fails to cooperate as set forth in Paragraphs 4 and 5 of this Agreement; or (d)

otherwise fails to completely perform or fulfill each of the Company's obligations under the Agreement, regardless of whether the Office becomes aware of such a breach after the Term is complete, the Company shall thereafter be subject to prosecution for any federal criminal violation of which the Office has knowledge, including, but not limited to, the charges in the Information described in Paragraph 1, which may be pursued by the Office in the U.S. District Court for the Southern District of Florida or any other appropriate venue. Determination of whether the Company has breached the Agreement and whether to pursue prosecution of the Company shall be in the Office's sole discretion. Any such prosecution may be premised on information provided by the Company or its personnel. Any such prosecution relating to the conduct described in the attached Statement of Facts or relating to conduct known to the Office prior to the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the Company, notwithstanding the expiration of the statute of limitations, between the signing of this Agreement and the expiration of the Term plus one year. Thus, by signing this Agreement, the Company agrees that the statute of limitations with respect to any such prosecution that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term plus one year. In addition, the Company agrees that the statute of limitations as to any violation of theft of government funds (or related charges) that occurs during the Term will be tolled from the date upon which the violation occurs until the earlier of the date upon which the Office is made aware of the violation or the duration of

the Term plus five years, and that this period shall be excluded from any calculation of time for purposes of the application of the statute of limitations.

12.   In the event the Office determines that the Company has breached this Agreement, the Office agrees to provide the Company with written notice of such breach prior to instituting any prosecution resulting from such breach. Within thirty days of receipt of such notice, the Company shall have the opportunity to respond to the Office in writing to explain the nature and circumstances of such breach, as well as the actions the Company has taken to address and remediate the situation, which explanation the Office shall consider in determining whether to pursue prosecution of the Company.

13.   In the event that the Office determines that the Company has breached this Agreement: (a) all statements made by or on behalf of the Company to the Office or to the Court, including the attached Statement of Facts, and any testimony given by the Company before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the Office against the Company; and (b) the Company shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that any such statements or testimony made by or on behalf of the Company prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible. The decision whether conduct or statements of any current director, officer or employee, or any person acting on behalf of, or at the direction of, the Company, will be

8

imputed to the Company for the purpose of determining whether the Company has violated any provision of this Agreement shall be in the sole discretion of the Office.

14. The Company acknowledges that the Office has made no representations, assurances, or promises concerning what sentence may be imposed by the Court if the Company breaches this Agreement and this matter proceeds to judgment. The Company further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

## Public Statements by Company

15. The Company expressly agrees that it shall not, through present or future attorneys, officers, directors, employees, agents or any other person authorized to speak for the Company make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Company set forth above or the facts described in the attached Statement of Facts. Any such contradictory statement shall, subject to cure rights of the Company described below, constitute a breach of this Agreement, and the Company thereafter shall be subject to prosecution as set forth in Paragraph 11 of this Agreement. The decision whether any public statement by any such person contradicting a fact contained in the attached Statement of Facts will be imputed to the Company for the purpose of determining whether it has breached this Agreement shall be at the sole discretion of the Office. If the Office determines that a public statement by any such person contradicts in whole or in part a statement contained in the attached Statement of Facts, the Office shall so notify the Company, and the Company may avoid a breach of this Agreement by publicly repudiating such statement(s) within five business days after notification. The Company shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating

9

to the matters set forth in the attached Statement of Facts provided that such defenses and claims do not contradict, in whole or in part, a statement contained in the attached Statement of Facts. This Paragraph does not apply to any statement made by any present or former officer, director, employee, or agent of the Company in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of the Company.

16. The Company agrees that if it, if the parent company or any of its direct or indirect subsidiaries or affiliates issues a press release or holds any press conference in connection with this Agreement, the Company shall first consult with the Office to determine (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters between the Office and the Company; and (b) whether the Office has any objection to the release.

17. The Office agrees, if requested to do so, to bring to the attention of law enforcement and regulatory authorities the facts and circumstances relating to the nature of the conduct underlying this Agreement, including the nature and quality of the Company's cooperation and remediation. By agreeing to provide this information to such authorities, the Office is not agreeing to advocate on behalf of the Company, but rather is agreeing to provide facts to be evaluated independently by such authorities.

### Limitations on Binding Effect of Agreement

18. This Agreement is binding on the Company and the Office but specifically does not bind any other component of the Department of Justice, other federal agencies, or any state, local or foreign law enforcement or regulatory agencies, or any other authorities, although the Office will bring the cooperation of the Company and its compliance with its other obligations

under this Agreement to the attention of such agencies and authorities if requested to do so by the Company.

11

### Complete Agreement

19. This Agreement, including its attachments, sets forth all the terms of the agreement between the Company and the Office. No amendments, modifications or additions to this Agreement shall be valid unless they are in writing and signed by the Office, the attorneys for the Company and a duly authorized representative of the Company.

**AGREED:**

**FOR DAXC:**

Date: 2/20/17                              By: _____
                                                Authorized Representative of DAXC LLC


Date: 2/20/17                              By: _____
                                                Stephen Binhak
                                                Office of Stephen James Binhak, PLLC

**FOR THE DEPARTMENT OF JUSTICE:**

                                                WIFREDO A. FERRER
                                                United States Attorney

Date: 2/14/17                              By: _____
                                                Michael R. Sherwin
                                                Assistant U.S. Attorney

                                                _____
                                                Michael N. Berger
                                                Assistant U.S. Attorney

12

## COMPANY OFFICER'S CERTIFICATE

I have read this Agreement and carefully reviewed every part of it with outside counsel for DAXC, LLC (the "Company"). I understand the terms of this Agreement and voluntarily agree, on behalf of the Company, to each of its terms. Before signing this Agreement, I consulted outside counsel for the Company. Counsel fully advised me of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this Agreement.

I have carefully reviewed the terms of this Agreement with the Members of the Company. I have advised and caused outside counsel for the Company to advise the Members fully of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into the Agreement.

No promises or inducements have been made other than those contained in this Agreement. Furthermore, no one has threatened or forced me, or to my knowledge any person authorizing this Agreement on behalf of the Company, in any way to enter into this Agreement. I am also satisfied with outside counsel's representation in this matter. I certify that I am the Authorized Representative for the Company and that I have been duly authorized by the Company to execute this Agreement on behalf of the Company.

Date: 2/21/17

DAXC, LLC
By: _____
Authorized Representative

## CERTIFICATE OF COUNSEL

I am counsel for DAXC (the "Company") in the matter covered by this Agreement. In connection with such representation, I have examined relevant Company documents and have discussed the terms of this Agreement with the Company's Members. Based on our review of the foregoing materials and discussions, I am of the opinion that the representative of the Company has been duly authorized to enter into this Agreement on behalf of the Company and that this Agreement has been duly and validly authorized, executed, and delivered on behalf of the Company and is a valid and binding obligation of the Company. Further, I have carefully reviewed the terms of this Agreement with the Members and the Manager of the Company. I have fully advised them of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions and of the consequences of entering into this Agreement. To my knowledge, the decision of the Company to enter into this Agreement, based on the authorization of the Board of Directors, is an informed and voluntary one.

Date: 2/20/17

By: _____
Stephen Binhak
Office of Stephen James Binhak, PLLC
Counsel for DAXC, LLC

ATTACHMENT A

**STATEMENT OF FACTS**

The following Statement of Facts is incorporated by reference as part of the Deferred Prosecution Agreement (the "Agreement") between the United States Attorney's Office, Southern District of Florida (the "Office") and DAXC, LLC ("DAXC"). DAXC hereby agrees and stipulates that the following information is true and accurate. DAXC admits, accepts, and acknowledges that it is responsible for the acts of its officers, directors, employees, and agents as set forth below. Should the Office pursue the prosecution that is deferred by this Agreement, DAXC agrees that it will neither contest the admissibility of, nor contradict, this Statement of Facts in any such proceeding.

DAXC was a shell construction subcontractor, which was set up to inflate the cost of four low-income housing contracts and obtain excess federal funds that ultimately went for the personal benefit of five individuals associated with DAXC and its affiliates.

Developer A applied for federal tax credits and grant monies issued by the federal government through a program administered by the Florida Housing Finance Corporation ("FHFC"). FHFC authorized the allocation of tax credits and grant monies based on development costs. Generally, a development with higher construction costs would receive more tax credits and/or grant monies. To receive the federal tax credit and/or grant allocation, FHFC required developers to submit an itemized construction contract between the developer and general contractor setting forth the compensation that the contractor would receive to build the development (the "construction contract"). FHFC authorized developers to earn a sixteen percent

fee of total development costs and contractors to earn a fourteen percent fee of total construction costs

Developer A used its captive contractor—Contractor A—as the contractor on numerous developments, including the following four developments built from 2009 to 2011 (together, the "Subject Developments"):

- **Cypress Cove:** an 80-unit low-income apartment complex in Winter Haven, Florida.

- **Orchid Grove:** an 80-unit low-income apartment complex in Homestead, Florida.

- **Pinnacle at Avery Glen:** a 140-unit low-income apartment complex in Sunrise, Florida.

- **Vista Mar:** a 110-unit low-income apartment complex in Miami, Florida.

Contractor A solicited final bids from subcontractors for each of the construction items related to the Subject Developments, including final bids for the concrete shell work from Shell Subcontractor A. Shell Subcontractor A agreed to complete the concrete shell work for is final bid price and did, in fact complete the concrete shell work on the Subject Developments.

Developer A and Contractor A did not list this final bid price for concrete shell work from Shell Subcontractor A in the itemized construction contracts submitted to FHFC's representatives for the Subject Developments. Instead, Developer A and Contractor A submitted construction contracts to FHFC's representatives with an inflated amount for concrete shell work. This inflated amount resulted in the award of excess federal funds for the Subject Developments.

B-2

Contractor A signed inflated contracts for the performance of the concrete shell work with the affiliated entity, DAXC, that inflated the concrete shell cost for each of the Subject Developments by a total of approximately $3.4 million compared to Shell Subcontractor A's final bid prices. This contract inflation also inflated the developer's and contractor's fees available to Developer A and Contractor A by approximately $800 thousand. DAXC did not have the equipment, personnel, or manpower to complete the concrete shell work for the projects.

As a result of the inflated construction contracts, FHFC authorized excess federal tax and grant monies, funds of which ultimately went to DAXC for the Subject Developments that were neither needed for or used for construction. From the contract inflation proceeds, DAXC received the inflated proceeds and directly distributed over $3.1 million in funds for the personal benefit of five individuals associated with DAXC and its affiliates.